When you're ready, sorry. Thank you, Your Honor. Good morning, my name is Wendy Holt and I represent the appellant in this case, Robert Stoltz. Rob was sentenced on the basis of a demonstrably inaccurate pre-sentence report. Although ultimately I was able to make objections to that report and presented evidence establishing that the report was inaccurate and frankly unfair, no findings were ever made on my objections. In what respects, remind me, was it inaccurate? It was in multitude of respects that are set forth in my, the ones that I was able to find in that week, are set forth in detail in my supplemental sentencing memorandum. I can go into, there was. Just give me a couple. To me, the ones that were most offensive to me personally were ones that indicated, were written as though Rob had stolen money from people when it was clear that he was the person who had been, who had been shorted money. The two examples of that are on the hay sale where they said he was supposed, he had a deal for 1,000 tons of hay at $115 a ton. And that he hadn't produced the final 90 tons of hay. But that he had made $34,000 on this deal. Well, if he had been paid what he was owed on that deal, he would have been paid about $115,000. But that sentence of the pre-sentence report was written to make it look like Rob was in the wrong. The other one was on the subdivision issue where Rob made a deal with some people to build a subdivision on some land on the outskirts of Billings, Montana. He financed and did the work to put together the infrastructure of that subdivision. That's right when the economy was crashing, the real estate market was crashing. And the subdivision, and ultimately it wasn't working out so well. The people who he was doing this for wanted him to quit claiming his interest in it. He didn't. But Ms. Holton, isn't this the point? I mean, you're just trying to explain to us a couple of these discrepancies. And how is Judge Sandstrom supposed to be up there and figure out the complexities of all these things if they don't really matter to his computation of the guidelines or anything like that? I mean, we always end up at sentencings with a whole host of things that defense counsel and the government or defense counsel in probation might disagree on. But if they're not important to our consideration, you can't expect us to conduct many trials and bring in witnesses just to determine whether he was or was not civilly liable in a case that's not the one before us. And the problem is, is that it's the impression that it creates of Rob. And now that we're past a strict guideline system after Booker, those things do matter. They matter a lot. And if they're not accurate, if all that this pre-sentence investigation does is give an inaccurately negative perception of the defendant. But is there anything in the record that would support the argument that these matters affected the judge's perception of your client in a negative way? There is nothing in the record that indicates truly what impact that they had. He was required by Rule 32 to make findings on the disputed matters in the pre-sentence report. Only if it affects the sentence, though. Well, he did not make the finding that it did not affect the sentence. And that's the other requirement of Rule 32, is that you either have to make the findings that they don't affect the sentence, or you have to make findings on the disputed matters. But if there's nothing in the record that would support a conclusion that it affected his sentence, if he didn't make any statements like, you know, he's a deadbeat, he didn't pay his child support or whatever the issues are, there's nothing in the record that would indicate that these matters affected sentencing. So under a harmless error analysis, why don't you lose? Because I think that under sentencing pursuant to the sentencing guidelines in 3553, I don't think it's reasonable to come to the conclusion that of all other things being equal, a person who comes before the court with an accurate and positive pre-sentence investigation report is not going to fare better at sentencing than a defendant who comes before the court with an inaccurate and extremely negative pre-sentence report. Well, it's not extremely negative in the terms of crimes. It's in terms of his business relationships with other people, which is a different thing than saying he's a child molester, he beats his wife, you know. So I'm not sure that that premise follows from the types of disputes that you're talking about. Well, I guess that I think that there is evidence in the record that it does, because when I took that report to the psychological expert that I had hoped to hire and said, what can you tell me from this and what I'm going to tell you, he said, you know, if I was just reading this report, I would say that this guy is antisocial or has some other very negative personality traits. But he's looking at it from a psychological viewpoint, not from a sentencing viewpoint. Judges don't try to diagnose psychological impairments when they're looking at pre-sentence reports. So that's kind of mixing apples and oranges in terms of, you know, what effect it might have on determining what the sentence would be. I'm not sure that that's a persuasive argument. Well, I think that you can get the other part of that argument, though, is that the very minuscule rationale that the judge in this case did give for the sentence that he imposed, that all of the people involved in the lawsuits that were listed in the pre-sentence report had lost money. That's not true. All of those things are based on, you know, frankly, the economy going bad. Rob, people filing judgments against or filing lawsuits against Rob, and Rob allowing default judgments to be entered and then paying off those judgments. Most of those judgments in those lawsuits listed in this pre-sentence report have been paid off. So the judge clearly got an inaccurate. Let me ask you this, if I can. Is your client already serving time? No, no. What happened? It says 13 months, but he hasn't started it yet. No. And it goes, again, to some of the odd things that happened in this case. This case went along in a very odd procedural manner. I don't think through anybody's- Even for Montana? Even for Montana, yes. But at the end of the second day of the sentencing hearing, the judge said, without any basis on the record, but, again, apparently based on something that the pre-sentence report writer had said to him, well, I think you might retaliate against some of these people, so I'm going to detain you, but you can have a detention hearing. So, you know, given that invitation, of course I'm going to ask for a detention hearing, which I did, and we had a detention hearing a couple of weeks or a week or so later, at which point Rob was released pending the resolution of this appeal. So, no, he has not started serving that sentence yet. Okay. Now, you said the very short thing. I mean, I'll just read what the judge said before sentencing, after there was the argument as to the PSR and what it meant and so on. The judge says, well, again, these are difficult cases, but there is a tremendous amount of money here that people in the community have lost because of the trust that they had in you and that you betrayed them, I think. The lawsuits that are listed here, the civil lawsuits, you've got an excuse for them, but every one of those cases resulted in people losing money because of their association with you, pursuant to the non-incriminating sentences. That doesn't strike me as a statement that he's disregarding all the disputed allegations in the PSR. That seems to me the natural reading of it. He's paying attention to them. He says every one of them, people lost money because of you. You betrayed them. But he was wrong on that point. Well, I mean, that's my problem with what happened here. I think I'll reserve the rest of my time. Thank you. Yeah, that's a good note for you to end on, I think. I think that's a good note on which you should end. Yeah, okay. May it please the Court, I'm Ryan Archer, Assistant U.S. Attorney in Billings, Montana. And maybe I should say at the get-go, I used to be Assistant U.S. Attorney in Oregon too, so not just Montana, so don't pick on me too much. We like Montana. Judge Fletcher, to address your last point. I mean, that's the centerpiece for me. Right. Well, the distinction here is that those lawsuits are uncontroverted. And actually, I think that's what shows Judge Sandstrom relied on just exactly what he was supposed to rely on here, which is the uncontroverted facts. What Ms. Holton – Well, but the fact of the lawsuit may be uncontroverted, but they lost because of the trust they had in you. You betrayed them. You've got an excuse that every one of them resulted in people losing money because of their association with you. But that's different from just the fact that there's some lawsuits out there. Well, I don't necessarily think so. I mean, the fact that there's a lawsuit that some circumstance happened that required 17 lawsuits that he didn't disclose to the PSR writer in the first instance, by the way. I mean, that's partially why this sentencing proceeding took so long and was so awkward, is we kept uncovering financial difficulties. My office was on a weekly basis almost getting calls with regard to people who he owed money to. I think the probation was getting the same. And so it was this long, drawn-out process to reach his financial condition, what exactly it was. And the fact is he had 17 lawsuits against him. He was a plaintiff, I think, in one additional lawsuit that he didn't disclose. And I think it's fair for the judge to look at that and say, regardless of the facts and circumstances of those lawsuits, people are losing money here, whether it's hiring an attorney required to go file a lawsuit or whatever. People are definitely losing money. So you don't think that militated toward the judge at least ruling on the objections and making a finding regarding which side of the equation he thought had more weight? No, I think what that shows is he relied on uncontroverted facts. He relied on the fact of all these 17 lawsuits, and he didn't get into the details of each lawsuit. He didn't get into the details of all these disputed facts. Well, yeah, that's correct. He didn't get into the detail. But what troubles me is that he characterizes them as, there's a tremendous amount of money here that people in the community have lost because of the trust they had in you and that you betrayed them. I mean, he's construing these lawsuits as reflecting very badly on this defendant. So he's not getting into the detail. He's just assuming it's a blanket matter. You know, you betrayed these people. Well, maybe he did, maybe he didn't. There are a lot of lawsuits. I mean, where there's smoke, maybe there's some fire. There are a lot of lawsuits, but there's absolutely no indication that he relied on any of the disputed facts that Ms. Holton had brought. And, in fact, when the witnesses were testifying on her behalf, I think my comment in the trial court is the same as my comment here and the same as Judge Lasnik said. Each of these issues was a mini-lawsuit in itself, and we weren't there to resolve those facts. But the fact is that they were still there. This was a guideline sentence, too, right? It was not an exceptional sentence upward for violations of trust or other things other than what he pled guilty to. No, this was a guideline sentence. The top end was 14 months, and he got a 13-month sentence. And the bottom end, I can't remember what the bottom end was. Eight. It was an eight-month to 14-month range. He got 13 months. But I think what's significant in this case is that between the first sentencing hearing on April 29th and the last sentencing hearing on May 6th is the judge fully considered the defendant's positions because he gave him an additional two points for a reduction of acceptance of responsibility. And, actually, I think that's what sort of controverts this painting of an evil picture of Mr. Stoltz, is that when we had the first sentencing hearing, the judge set the guideline range at 12 to 18 months, at an offense level 13, I believe, at 12 to 18 months on April 29th. And then Ms. Holton asked for another week to respond to some of these factual allegations. She put on a very extensive display at the final sentencing hearing. She had about 50 pages of exhibits to her final sentencing memorandum. She put on three or four witnesses at the sentencing hearing, I believe. And as a result of that, Judge Shantrum actually reversed his finding of the previous week. And he says, well, you know, upon further reflection here, I'm granting you the acceptance of responsibility. But, still, that doesn't take away from the fact that there are 17 lawsuits against you. A lot of people are out money. The bank, in fact, that was defrauded in this case was out over a million dollars in the end. I have to say my problem was not with the actual sentence. My problem was sort of in a sense with the technical detail of what he said or didn't say. Well, and I agree it would have been better if he had just made a finding that he didn't consider it. I mean, that certainly would be better. But we have to realize that this is a plain error review because Ms. Holton down below could have made the objection. And he could have made that finding right there. And that's essentially why we have the plain error standard. It's something that can be remedied as easily as a one-sentence thing can be made down below. And so I think we have to look at did this, in fact, affect substantial rights? Is there a reasonable probability that, in fact, the defendant would get a different sentence if it went back? Yeah, I mean, that's an interesting question. If there had been an objection right there saying, Judge, you are relying on these contested facts, after he says that, what's the judge then do? He says, oh, that's not true. Disregard what I just said. This has no bearing on the sentence I'm about to – I mean, these are all magic words. I mean, it's kind of fantasy land, really. I might say I'm just rambling. I'm just, you know, because sometimes that's what you do. That is right. You're thinking aloud. You're in the moment. But you're not really considering that as part of the rubric for the sentence, but you're just musing about some of the evidence that's in front of you. And it's different than if you're deciding an issue that relates to scoring of the guidelines, where it's a plus 2 or a minus 3 and the acceptance of responsibility. As you say, that's one that Judge Shandstrom reversed himself on. I don't want to hold it against her that I know Ms. Houlton to be a wonderful advocate, but she is a great advocate, and she had plenty of time and pages to make her points at the sentencing. Did she have enough time to meet the things that came in in the last week? She's so thorough, she would have liked more time. But I don't know too many sentencings that were continued as many times as this one either. It's pretty thorough. Well, Your Honor makes a good point. This was a very drawn-out process, and I agree with you. Ms. Houlton did an exceptional job in the week she had to organize a tremendous defense for Mr. Stoltz at sentencing. I think at the end of the day this is a very common-sense case, as Your Honors were all discussing. When you take a step back and look at the big picture here, the judge on the April 29th hearing, he actually did find that none of these objections affected the guideline range. He then, in the last hearing, granted the only real substantive objection, which was giving him the acceptance of responsibility. And again, I think the contemporaneous objection here would have resolved the procedural error, because that's exactly what we're here for. Every single issue in this appeal is procedural. There's not a single substantive appeal issue here. It's all procedural. And I don't think that the defendant here can show that there's a reasonable likelihood or reasonable probability that the sentence would be any different if it went back. I think what would happen is you'd get, you know, say the magic word. A third mini-trial. Yeah, exactly, a third mini-trial. And I think what's also important to note is all of the facts that the defense is now saying weren't resolved. They were all in the financial ability or financial condition ability to pay section of the PSR. They weren't relevant conduct. They weren't related to the offense of conviction. They were purely related to his financial condition. And when you take a step back and look at all of those issues, they had no bearing on the temporal term of the sentence. And I think the Saturn case out of the Ninth Circuit here says there has to be some effect on the temporal term of the sentence. And I don't think that happened here. And that's why the Rule 32 issue should be affirmed. Okay. Thank you. Ms. Holden. Thank you, Your Honor. Just a couple of comments. Judge Rawlinson, in response to something that you said, you know, how do we know that it matters? Well, I guess if it doesn't matter, why is it in the pre-sentence report in the first place? I mean, why do we include these things in the pre-sentence report? It's to give everybody in the system an impression of who this person is. Counsel made an interesting point that all of this was in the ability to pay portion of the pre-sentence report, not in the relevant conduct or in the guideline calculation part. So what's your response to that? I think actually all of these things weren't just in that section. If you go to the government's brief at page 9, he discusses the things that weren't just in the ability to pay. Well, the detail regarding his financial background, I guess these are in the financial ability to pay, but again they go to the impression of this human being. Cattle sales, payments received, current employment, money owed to Martin Kemet, detail of the sale of collateral, loan not previously discussed, money owed in back wages, longer description of his property, two more lawsuits, a paragraph describing a land deal gone bad. Again, you know, if those things were presented fairly, I don't have a problem. I have to tell you, when I was a district court judge, the part that was in the ability to pay was very low on my radar. It was extremely low on my radar. But my overarching point here is that I don't think the district court had a fair impression of who Rod Stoltz is. I understand your argument. And I'm sure the platitudes don't please you as much as getting your point across would. But we commend you for your efforts. Thank you, Your Honor. Okay. Thank both sides for nice arguments. The case of United States v. Stoltz is now submitted for decision. The next case on the argument calendar this morning, T.W. v. Spokane County.
judges: Lasnik, Fletcher W. , Rawlinson